ORIGINAL



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

RONALD TUCKER,
    MOVANT

-V-

MICHAEL ZENK,
    RESPONDENT

IN RE: CIVIL NO. 1:CV-00-1780

(HON. YVETTE KANE)

FILED
HARRISBURG PA
DEC 23 2002
MARY E. D'ANDREA, CLERK
Per _____

**AFFIDAVIT OF RONALD TUCKER IN SUPPORT OF HIS MOTION FOR RELIEF FROM JUDGEMENT PURSUANT TO FED. RULES. CIV. PROCEDURE 60(B)(2) AND (3)**

I, Ronald Tucker, hereby declare and state as follows:

1. I am a prisoner currently confined at F.C.I. Allenwood, in White Deer, Pennsylvania, P.O. Box 2000, 17887, and I have been incarcerated at this facility since June 8, 1995.

2. When I arrived at this facility I was given a sentence computation that reflected a projected release date of April 4, 2004.

3. On February 5, 1998, the Records Office, to wit, Ms. Carol J. Coffey, removed 1,332 days from my sentence computation and increased the amount of time I would have to serve in prison. My projected release date was changed to November 28, 2007.

(1)

4. I exhausted my administrative remedies in an effort to reinstate this time that was removed from my sentence computation, and the Bureau of Prisons have consistently maintained that I was "borrowed from New York Department of Corrections via writ of habeas corpus ad prosequendum on 1-23-92."

5. For the past, approximately five(5) years, I have repeatedly attempted to exhaust my administrative remedies in an effort to reinstate my jail time that was removed on February 5, 1998, and I have repeatedly asked BOP staff for a copy of the writ of habeas corpus ad prosequendum, both from my Unit Team and from the Records Office.

6. The Unit Team has repeatedly told me that the Records Office has a copy of the writ and I should obtain it from them (the Records Office)

7. The Records Office, to wit, Ms. Coffey and Mr. Farley have repeatedly told me that I must get the writ from my Unit Team.

8. After repeatedly going back and forth between the Unit Team and the Records Office, and being unable to obtain a copy of said writ, I began to submit Freedom of Information Request to various Department of Justice and State Agencies in an effort to receive a copy of the writ.

9. On February 16, 2001, in connection with a habeas corpus petition filed by the Affiant, Mr. Farley, Assistant Inmate Systems Manager, declared that: "On January 23, 1992, the petitioner was removed from state custody pursuant to a writ of habeas corpus ad prosequendam [sic] to answer federal charges which had been filed against him." Mr. Farley also declared: "Records staff at F.C.I. Allenwood discovered that the petitioner had been removed from the State of New York pursuant to a federal writ, ..."

10. On October 15, 2002, I initiated an "Inmate Request to Staff" to Mr. Wilcome, Inmate Systems Supervisor, requesting "a copy of the writ of habeas corpus ad prosequendum that was used to remove my person from Fulton on January 23, 1992." Mr. Wilcome never responded to this request.

11. On October 24, 2002, I went to "open house" at the Records Office at approximately 10:50 AM. As I was walking to the door of the Record Office, Mr. Wilcome was exiting the door and I asked Mr. Wilcome was he going to respond to the "cop-out" that I sent to him. Mr. Wilcome asked me "what was it about?" I told him it was about me receiving a copy of the writ. Mr. Wilcome told me to go inside and talk to someone at "open house."

12. I went inside, and Mr. Fortin told me it was too early for open house.

(3)

13. I then went to mainline to eat lunch. At mainline, I approached Associate Warden Craig and gave him an "Inmate Request to Staff" [cop-out] seeking his assistance in helping me to obtain a copy of the writ. I told A.W. Craig that I had sent a cop-out to Mr. Wilcome and Mr. Wilcome did not answer my request. Associate Warden Craig said that he "would look into it."

14. After eating lunch, I returned to the Records Office for "open house". Mr. Fortin came to the door and then called to Ms. Coffey saying "Tucker's here".

15. Ms. Coffey asked me "What do you want?" I said "I need the writ." Ms. Coffey then says "I told you we cannot give it to you, you have to get it from your unit team." I said "I tried getting it from my unit team, and they keep telling me to get it from you." Ms. Coffey says "They have everything we have, if they tell us to give it to you, then we'll make arrangements for you to get it." I then asked Ms. Coffey, "Can I at least see it?" Ms. Coffey says "Why should I show you something that I can't give you?" I said "Because I want to see the return date on the writ." Ms. Coffey then said, "There's no return date on writs." I said "Yes there are." Mr. Fortin then says to me, "You can't get a copy of the writ, that's a breech of security." Ms. Coffey then says, "No, he's talking about an old writ from 1992."

16. I then continued conversing with Ms. Coffey and I asked her was she familiar with the federal policy that says that a

(4)

Warden shouldn't release an inmate to another sovereign if the inmate has an imminent parole hearing. Ms. Coffey said that she "didn't know anything about that". Ms. Coffey said that if a State comes with a writ for an inmate, "he's leaving."

17. I then say again to Ms. Coffey that "I just want to see the writ."

18. Ms. Coffey then went to my file and pulled out my folder, flips some pages, and says to me "There's no writ in here." I said "What do you mean there's no writ in there?"

19. I said to Ms. Coffey, "Mr. Farley wrote in his declaration to the court that I was taken from the State on a writ, and you all have been telling me since 1998 that I was on a writ, now you're telling me that you don't even have a writ?"

20. Mr. Fortin then asked Ms. Coffey a question about an "I-29" or something. I didn't understand that terminology, but I believe it had something to do with the U.S. Marshal Service.

21. On either Friday, October 25th or Monday October 28th, I spoke with Associate Warden Craig at mainline and expressed to him what had transpired at "open house", and the fact that after all these years of being told I was on writ from the state, the Records Office revealed to me that they do not have this writ. I told A.W. Craig that "I just want them to give me my credit back."

(5)

22. Associate Warden Craig then calls Ms. Coffey on the telephone while I am standing there with him. A.W. Craig spoke on the phone for a few minutes, then hangs up the phone and says to me "You got caught up."

23. A.W. Craig then speaks to me at length about my situation and asks me about another inmate by the name of Raymond Thomas. I told A.W. Craig that I am familiar with Raymond Thomas' case because It was me who did the administrative remedies for him.

24. A.W. Craig then asked me to send him my BP-11 Response that I received from the Central Office in regards to the issue I raised about my case being similar to Raymond Thomas.

25. On Monday, October 28, 2002, I received at mailcall in unit 3A, a response to the "cop-out" that I gave to A.W. Craig on October 24, 2002, requesting his assistance in helping me to obtain a copy of the writ. This "cop-out" was responded to by Ms. Coffey, and stated: "As we discussed at open house we do not have this document in your J&C file."

26. At no time prior to October 24, 2002, was I ever made aware that the Bureau of prisons were not in possession of a writ of habeas corpus ad prosequendum.

(6)

I declare under the penalty of perjury pursuant to 28 U.S.C. §1746 that the statements made herein are true and correct to the best of my knowledge and recollection. Executed this __19__ day of December 2002.

*Ronald Tucker*
Ronald Tucker 39032-053
F.C.I. Allenwood
P.O. Box 2000
White Deer, PA 17887